UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                            :
CHRISTOPHER RAPCINSKY,                                      :
                                                            :
                              Plaintiff,                    :       11 Civ. 6546 (JPO)
                                                            :
              -v-                                           :       MEMORANDUM AND
                                                            :             ORDER
SKINNYGIRL COCKTAILS, L.L.C. et al,                         :
                                                            :
                              Defendants.                   :
                                                            :
------------------------------------------------------------X

J. PAUL OETKEN, District Judge:

In this action, Plaintiff Christopher Rapczynski[1] asserts claims under the New York General Business Law, § 349; New York Agriculture and Markets Law, § 198 *et seq.*; and state common law, against Defendants Skinnygirl Cocktails, L.L.C., SGC Global, L.L.C., and Beam Global Spirits & Wine, Inc.  Plaintiff has moved for certification of a class comprising all persons who purchased Defendants' drink, "Skinnygirl Margarita," from March 1, 2009 until the date of notice dissemination.  For the reasons that follow, Plaintiff's motion for class certification is denied.

I.     Background

       A.     Factual Background

       This litigation centers on a ready-to-drink alcoholic beverage—the Skinnygirl Margarita—developed by reality television star Bethenny Frankel ("Frankel").  Frankel wears

---

[1] The Complaint was originally filed on behalf of Christopher Rapczynski and one Erin Baker, who has since been terminated as a plaintiff in this action, leaving Mr. Rapczynski as the sole plaintiff.  (*See* Order, Dkt. No. 51.)  Mr. Rapczynski's name is misspelled as "Rapcinsky" in the Complaint, First Amended Complaint, and in the Plaintiff's Memorandum.  (Declaration of Garrett S. Kamen ("Kamen Decl."), Ex. A ("Pl. Dep."), at 88.)

1

many hats, one of which is that of a "natural" food connoisseur; for example, Frankel is the author of the best-selling book *Naturally Thin*. (First Amended Complaint, Dkt. No. 12 ("Compl."), at ¶ 10.) In 2009, Frankel, together with business partner David Kanbar ("Kanbar"), formed Skinnygirl Cocktails, L.L.C. ("Skinnygirl"). (Skinnygirl Cocktails' and SGC Global's Memorandum in Opposition, Dkt. No. 45 ("Def.'s Opp."), at 4.) Together, Frankel and Kanbar developed the Skinnygirl Margarita, which was to be a low-calorie alternative to typical margarita mixes. (*See* Declaration of Thomas M. Mullaney ("Mullaney Decl."), Deposition of David Kanbar, Ex. C ("Kanbar Dep."), at 40:5-13.)

In March 2011, pursuant to an asset-purchase agreement, Beam Global Spirits & Wine, Inc. ("Beam"), through its subsidiary Jim Beam, purchased the Skinnygirl Margarita trademark, together with certain related assets." (Opposition of Defendant Beam ("Beam Opp."), at 3.) Neither Beam nor Jim Beam assumed any liability for sales or marketing activities occurring before that acquisition. (*Id.*) As part of the terms of this sale, Skinnygirl gave up the rights to the brand name, meaning it discontinued any future use of the 'Skinnygirl' name. Hence, Skinnygirl, the company, became SGC Global, L.L.C. ("SGC"). (Def.'s Opp. at 6.) Thus, SGC asserts that, since March 17, 2011, it has "had nothing to do with any statement, website, advertising, or anything else regarding Skinny Girl products." (*Id.* at 6-7.) Frankel, however, is still involved as a spokeswoman for the Skinnygirl brand. (*See* Transcript of Conference, Jun. 25, 2012, Dkt. No. 61 ("Conf. Tr."), at 6:13-7:9; 13:21-14:4.)

Christopher Rapczynski ("Rapczynski") is a resident of Massachusetts. (Compl. at ¶ 1.) He purchased Skinnygirl Margarita at a convenience store across the street from his Massachusetts home. ("Pl. Dep." at 21:6-11.) Rapczynski stated that his wife first tasted Skinnygirl Margarita at a party, after one of her health-conscious friends told her "Oh, I love

these Margaritas," and after tasting the concoction, Rapczynski's wife said, "Oh, I love it, too." (*Id.* at 20:9-22.)  Rapczynski first purchased Skinnygirl Margarita for his wife as a surprise present, as she had just had twins and was "under a lot of stress at the house with the kids." (*Id.* at 21:22-25.)  Rapczynski had gone to the convenience store to purchase his wife ice cream, and once there, saw a promotional display for Skinnygirl Margarita.  (*Id.* at 21:17-20.)

When Rapczynski's wife first tasted Skinnygirl Margarita—at the social gathering—she did not tell him why she liked the drink.  (*Id.* at 25:22-24.)  Moreover, she never saw the bottle at this event, as it was served to her on a cocktail tray.  (*Id.* at 26:8-14.)  When asked why he purchased a bottle of Skinnygirl Margarita for his wife, Rapczynski stated: "because I love my wife."  (*Id.* at 27:22-23.)  Rapczynski added that he made the purchase because his wife "said she liked it," and "[s]he has my three children and works very hard."  (*Id.* at 27:25-28:4.)

Rapczynski recalls spending around $17.99 to $18.99 for the Skinnygirl Margarita, which is typically sold in a 750 ml bottle.  (*Id.* at 35:21-25.)  When asked if the price seemed reasonable to him, Rapczynski stated: "To be honest, I don't know.  In the sense that as compared to maybe deciding on other products, that bottle could have been $250, and given the heat and workload that we have at our house, I would have bought ten of them."  (*Id.* at 36:24-37:5.)

Between June 2011 and October 2011, Rapczynski purchased two bottles of Skinnygirl Margarita at this same neighborhood convenience store.  (*Id.* at 18:4-5.)  When pressed on why he purchased the bottles, he replied: "I bought the first bottle to appease my wife, and the second to complement the first bottle in offerings for people coming over."  (*Id.* at 38:13-16.)

Later, in a declaration dated July 18, 2012, Rapczynski expanded on his deposition testimony, explaining that the friend who originally remarked that she liked Skinnygirl Margarita to Rapczynski's wife at the party is "part of [his] wife's circle of friends from work . . . who are

3

all health- and diet-conscious." (Declaration of Christopher Rapczynski, Dkt. No. 54 ("Pl. Decl."), at ¶ 3.) Rapczynski added that he shops exclusively at Whole Foods, as "it is a grocery store committed to offering exclusively 'all natural,' organic and preservative-free food." (*Id.* at ¶ 5.) He further explained that had he "known that Skinnygirl was not in fact 'All-natural' and contained a preservative, [he] would not have bought it at all." (*Id.* at ¶ 6.) Rapczynski concluded his declaration with the statement that he "bargained for, and wanted, a drink that did not contain chemicals that could affect the health of [his] wife and [himself], or [his] children." (*Id.*)

B. **Allegations in the Complaint**

Rapcyznski alleges that Defendants caused "millions of purchasers of 'Skinnygirl Margarita' to purchase that product under the false pretense that it was 'All-natural' and contained only '100% Blue Agave tequila,' Agave nectar and caramel color." (Compl. at ¶ 45.) Rapcyznski claims that the product contradicts the all-natural lifestyle it promotes and contains the preservative sodium benzoate, along with *mixto* tequila—which Rapcyznski characterizes as a "Tequila by-product" that is "essentially a mash of Tequila and some unknown additives (rarely organic) which may comprise as much as forty nine percent (49%) of the final mixed liquor." (*Id.* at ¶ 8.) Rapcyznski claims that the labeling of the Skinnygirl Margarita as "All-natural," "With Natural Flavors," and "the margarita you can trust" is nothing more than false advertising. (*Id.* at ¶ 9.) Rapcyznski adds that upon its discovery of the presence of synthetic carcinogen—sodium benzoate—in Skinnygirl Margarita, Whole Foods discontinued selling the product; he alleges: "If a sophisticated nation-wide business was misled by the Skinnygirl and Beam Defendants, then the average consumer was certainly misled as well." (Compl. at ¶ 11.) The Complaint also asserts that the impression that Skinnygirl Margarita is a natural food is

4

augmented by Frankel's association with the product. (*See id.* at ¶ 13 ("Based on Ms. Frankel's notoriety, itself based on her alleged devotion to an all-natural lifestyle and authorship of a book on all-natural food preparation, 'Skinnygirl Margarita' is one of the largest ready-to-drink cocktail brands in the United States.").) In sum, Rapcyznski alleges that "Defendants' entire marketing campaign, both its advertisements and labeling, is based on falsehoods." (*Id.*)

Rapczynski's first cause of action is under New York General Business Law § 349. (*Id.* at ¶¶ 42-46.) He also asserts breach of express warranty, promissory estoppel, and New York Agriculture and Markets Law claims against Defendants. (*Id.* at ¶¶ 46-63.)

### C. Procedural History

Rapcyznski filed the first Complaint in this action on September 20, 2011. (*See* Complaint, Dkt. No. 1.) The First Amended Complaint was filed on November 16, 2011 (*See* Compl.), and Defendants answered on December 15, 2011. (*See* Answer to Amended Complaint, Dkt. Nos. 15, 19.) The motion for class certification was filed on May 1, 2012 (Motion to Certify Class, Dkt. No. 25.); Defendants filed their oppositions on June 15, 2012 (Dkt. Nos. 46-50); and Rapcyznski replied on July 18, 2012. (Reply Memorandum of Law, Dkt. No. 53 ("Pl. Rep.").)

## II. Discussion

### A. Legal Standard

Class certification is governed by Federal Rule of Civil Procedure 23. When a party seeks certification of a class, it must first establish four prerequisites, namely that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  These Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy are a baseline inquiry for any court considering the class certification question. *See Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc.*, 546 F.3d 196, 201-02 (2d Cir. 2008).

Even where all four of the 23(a) prerequisites are satisfied, a plaintiff seeking class certification must also show that his putative class fits into one of the three 23(b) classifications. *See generally* Fed. R. Civ. P. 23(b)(1)-(3).  Rule 23(b)(3), the action type at issue in the instant case, permits a court to grant class certification where all the 23(a) prerequisites are met and "the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  *Id.* at 23(b)(3).

While a plaintiff's pleadings are taken as true for the purposes of examining a class certification motion, *Shelter Realty Corp. v. Allied Maintenance Corp.*, 574 F.2d 656, 661 n. 15 (2d Cir. 1978), a district court must nevertheless apply a "rigorous analysis" to the question of whether a class "comports with all the elements of Rule 23."  *See Fogarazzao v. Lehman Bros., Inc.*, 232 F.R.D. 176, 179 (S.D.N.Y. 2005) (citing *General Tel. Co. of the Southwest v. Falcon,* 457 U.S. 147, 161 (1982)).  Furthermore, it is the plaintiff who "bears the burden of satisfying the requirements of Rule 23."  *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *8 (S.D.N.Y. Sept. 29, 2006).  The Second Circuit has clarified that a plaintiff must establish the Rule 23 requirements by a preponderance of the evidence.  *See In re Initial Pub. Offerings Sec. Litig*. ("*IPO*"), 471 F.3d 24, 37-38 (2d Cir. 2006); *see also Teamsters*, 546 F.3d at 202 ("Today, we dispel any remaining confusion and hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements.").  In

determining whether the class certification requirements have been met, a court must also "resolve[] factual disputes relevant to each Rule 23 requirement and find[] that whatever underlying facts are relevant to a particular Rule 23 requirement have been established." *Id.* at 41.

Moreover, courts must "make such determinations" regardless of whether there is "overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement." *Id.* In resolving these issues, courts "must receive enough evidence, by affidavits, documents, or testimony, to be satisfied that each Rule 23 requirement has been met." *Id.* At the same time, while some overlap is inevitable, courts must resist delving into the merits of a plaintiff's claim at the class certification stage where it is unnecessary to do so. *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 178 (1974) ("In determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met.").

### B. Typicality

Defendants oppose Rapczynski's motion on several grounds,[2] one of which is that Rapczynski's claims are atypical of the putative class and subject to unique defenses. (*See* Def.'s Opp. at 18-19; Beam's Opp. at 24-25.) Rule 23(a)'s typicality prerequisite demands that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Courts have interpreted this requirement to mean that the class

---

[2] Skinnygirl and SGC oppose Rapczynski's motion on the grounds that: (1) he lacks Article III standing; (2) he is an atypical class representative; (3) he is an inadequate class representative; (4) he has failed to show that common issues predominate over individual issues; and (5) he has not shown that the class method is the superior method for resolving this dispute. (*See* Def.'s Opp. at i-ii.) Beam opposes Rapczynski's motion on the grounds that: (1) individual issues, rather than common issues, would predominate; (2) the proposed class action is not a superior method of adjudication; (3) numerosity is lacking; (4) commonality is lacking; and (5) Rapczynski's claims are not typical. (Beam's Opp. at i-ii.)

members' claims must "arise[] from the same course of events, and each class member [must] make[] similar legal arguments to prove the defendant's liability." *Marisol v. Giuliani*, 126 F.3d 372, 376 (2d Cir. 1997). While "typical" claims need not be identical to one another, *Wilder v. Bernstein*, 499 F. Supp. 980, 992 (S.D.N.Y. 1980) ("There is no requirement that the factual basis for the claims of all members of a purported class be identical."), courts examining typicality must nevertheless look to circumstances such as the course of conduct giving rise to the class's putative claims, along with the likely defenses to be asserted against class members. *See In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir. 2009) ("To establish typicality under Rule 23(a)(3), the party seeking certification must show that 'each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability.'"); *cf. Marisol*, 126 F.3d at 377 ("The plaintiffs allege that their injuries derive from a unitary course of conduct by a single system, and the district court agreed.").

"While it is settled that the mere existence of individualized factual questions with respect to the class representative's claim will not bar class certification, class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation." *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000) (quotations omitted). In this sense, typicality and commonality, the latter of which looks to common questions of law and fact that exist among the putative class members, "tend to merge," as they both "serve as guideposts for determining whether . . . the named plaintiff's claim and the class claims are so inter-related that the interests of the class members will be fairly and adequately protected in their absence." *Fogarazzao*, 232 F.R.D. at 180 (quotations omitted).

At bottom, the typicality requirement concerns the fairness of allowing an entire class's claim to rise or fall with the fate of the named representative's claims; thus, that representative's claims must be typical of the class so as to prevent a false prophet from bearing the standard for an entire class of claims.

### 1. New York Business Law and Agriculture and Markets Claims

In one sense, any putative class member in this case would have the same, central claim: that he was harmed by either (1) ingesting a non-natural substance or (2) paying a premium for an "all natural" product, after being duped by Skinnygirl's—or Beam's—allegedly false advertising scheme. However, given the particular circumstances of Rapczynski's purchases of Skinnygirl Margarita, the typicality inquiry—that is, whether Rapczynski's claims involve legal theories and defenses that are similar to other potential class members' allegations—underscores Rapczynski's deficiency as a class representative.

To deny class certification "because all of the allegations of the class do not fit together like pieces in a jigsaw puzzle . . . would destroy much of the utility of Rule 23," *Green v. Wolf Corp.*, 406 F.2d 291, 300 (2d Cir. 1968). However, where the particularities of the lead plaintiff's own allegations separate his claim from those of other putative class members, a court may not certify the class.

Section 349 of New York's General Business Law provides that: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful." N.Y. Gen. Bus. L. § 349(a). The Second Circuit has held that "[t]o state a claim under § 349, a plaintiff must allege: (1) the act or practice was consumer-oriented; (2) the act or practice was misleading in a material respect; and (3) the plaintiff was injured as a result." *Spagnola v. Chubb Corp.*, 574 F.3d 64, 74 (2d Cir. 2009).

"New York law is clear that G.B.L. § 349 does not apply to out-of-state plaintiffs who were allegedly deceived outside of New York." *Chiste v. Hotels*, 756 F. Supp. 2d 382, 402 (S.D.N.Y. 2010).

Moreover, New York Agriculture and Markets Law is applicable only to products bought and sold within the state. It provides in relevant part:

> No person or persons, firm, association or corporation shall *within this state* manufacture, compound, brew, distill, produce, process, pack, transport, possess, sell, offer or expose for sale, or serve in any hotel, restaurant, eating house or other place of public entertainment any article of food which is adulterated or misbranded within the meaning of this article.

N.Y. Agric. & Mkts. L. § 199-a(1). The case law in New York has also so held. *See, e.g.*, *Hopkins v. Amtorg Trading Corp.*, 265 A.D. 278, 283, 38 N.Y.S.2d 788 (1st Dep't 1942) ("With respect to the alleged violation of the New York [Agriculture and Markets Law, former §§ 198, 199] statute plaintiffs did not establish that any transaction occurred in this jurisdiction. There was no proof that our statute had any application to the facts. No sale to any one of the plaintiffs was shown to have been made in New York nor is there any proof of a purchase or sale by any of the defendants in this State or that any transaction was ever had with regard to a New York law.").

Rapczynski admits that he purchased both bottles of Skinnygirl in Massachusetts, which means the laws he invokes do not protect his purchases. *See Goshen v. Mut. Life Ins. Co. of New York*, 98 N.Y. 2d 314, 324-25, 746 N.Y.S.2d 858 (2002) ("The reference in section 349(a) to deceptive practices in 'the conduct of any business, trade or commerce or in the furnishing of any service *in this state*' . . . unambiguously evinces a legislative intent to address commercial misconduct occurring within New York. Indeed, an examination of the text of General Business Law § 349 leads us to conclude that 'in this state' can only modify 'the conduct of any business,

10

trade or commerce [or] the furnishing of any service.'  The phrase 'deceptive acts or practices' under the statute is not the mere invention of a scheme or marketing strategy, but the actual misrepresentation or omission to a consumer.  Thus, to qualify as a prohibited act under the statute, the deception of a consumer must occur in New York." (internal citations omitted) (emphasis in original)).

It is axiomatic that "a class representative must be part of the class and possess the same interest and suffer the same injury as the class members." *Gen. Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (quotations omitted).  Here, while the nature of the alleged injury may be the same, Rapczynski, having not purchased his products in New York State, is an atypical representative of the New York class he purports to represent.  While Rapczynski seeks to represent a class of both Massachusetts and New York representatives, he attempts to assert the class's rights under at least two statutes that do not guard against the transactions which allegedly caused him injury: namely, transactions that occurred outside New York State.  "The typicality requirement goes to the heart of a representative [party's] ability to represent a class," *Deiter v. Microsoft Corp.*, 436 F.3d 461, 466 (4th Cir. 2006), and here, Rapczynski is unable to assert the typical class member's claim under New York law, as he made his purchases in Massachusetts.

It is often said of typicality in class actions that "as goes the claim of the named plaintiff, so go the claims of the class." *See, e.g.*, *id.* (quotations omitted); *Sprague v. General Motors Corp.*, 133 F.3d 388, 399 (6th Cir. 1998) ("The premise of the typicality requirement is simply stated: as goes the claim of the named plaintiff, so go the claims of the class.").  Put another way, where the lead plaintiff's claims fail, so too will those of the class.  Here, where a plaintiff purchased the product at issue in Massachusetts, he cannot be the typical representative of a class

11

asserting claims under New York law. Thus, at least as to the New York statutory claims, this Court would do a disservice to the putative class by certifying it with Rapczynski as the named plaintiff. *See Deiter*, 436 F.3d at 466 ("To be given the trust responsibility imposed by Rule 23, 'a class representative must be part of the class and possess the same interest and suffer the same injury as the class members.'" (quoting *Falcon*, 457 U.S. at 155)).[3]

### 2. Warranty

Rapczynski also asserts a breach of express warranty claim against Defendants, alleging that the descriptions of the Skinnygirl Margarita "constitute[d] express warranties and were part of the bargain made between Plaintiffs (and other Class members) and Defendants." (Compl. at ¶ 47.) It is unclear whether Rapczynski asserts his warranty claim under the laws of

---

[3] Moreover, given the shifting motives presented by Rapczynski with respect to the reasoning behind his purchase of Defendants' product, this Court has serious doubts as to the causation element of Rapczynski's claims. Additionally, it is likely that defenses specific to his own, individual purchase would become the "focus" of litigation. While Rapczynski is correct in his statement that a claim under N.Y. Gen. Bus. L. § 349(a) does not require *reliance* on the materially deceptive statement or advertisement, a plaintiff must nevertheless show that the "defendant's material deceptive act caused the injury." *Gale v. Int'l Business Machines Corp.*, 9 A.D.3d 446, 447, 781 N.Y.S.2d 45 (2d Dep't 2004); *see also Oswego Laborers' Loc. 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 26, 623 N.Y.S.2d 529 (Ct. App. 1995) ("By the same token, while the statute does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm.").

An inquiry into Rapczynski's exposure to the product and his veracity—given the apparent inconsistencies between his deposition and affidavit—"threaten[s] to become the focus of the litigation" in the sense that Defendants would seek to highlight these discrepancies and causation issues, which are unique to Rapczynski, his wife's tastes, and his family situation. *Cf. Baffa*, 222 F.3d at 59; *see, e.g.*, *Gale*, 9 A.D.3d at 446-47 ("Reliance is not an element of a claim under General Business Law § 349. However, the plaintiff must show that the defendant's material deceptive act caused the injury. Here, the plaintiff failed to plead causation with sufficient specificity to withstand dismissal. Although the plaintiff cites particular misleading statements by IBM regarding the reliability of the IBM Deskstar 75GXP, he nowhere states in his complaint that he saw any of these statements before he purchased or came into possession of his hard drive. If the plaintiff did not see any of these statements, they could not have been the cause of his injury, there being no connection between the deceptive act and the plaintiff's injury." (internal citations omitted)).

Massachusetts or New York, or both.[4]  (*See* Beam Opp. at 12 n.10; Compl. at ¶¶ 46-51; Pl. Mem. at 7.)  However, express warranty claims in both states require some showing of reliance on the part of a plaintiff.  *Compare Hiller v. DaimlerChrysler Corp.*, No. 02681, 2007 WL 32601199, at *4, 23 Mass. L. Rptr. 202 (Mass. Super. Sept. 25, 2007) ("Courts have indicated that the plaintiff must show at least some reliance on the defendant's representations to successfully state a claim for breach of an express warranty."), *and Stuto v. Corning Glass Works*, Civ. A. No. 88-1150, 1990 WL 105615, at *5 (D. Mass. July 23, 1990) ("Although no Massachusetts court has ruled explicitly on this issue, this court believes that some minimum of reliance is a required element of a breach of express warranty claim in this state. The Massachusetts Code Comments to M.G.L. c. 106 § 2–313 state that the 'part of the basis of the bargain' language 'is much like, although not the equivalent of, the concept of 'reliance' in section 12 of the Uniform Sales Act.'"), *with J.C. Const. Mgmt. Corp. v. Nassau-Suffolk Lumber & Supply Corp.*, 15 A.D.3d 623, 623, 789 N.Y.S.2d 903 (2d Dep't 2005) ("A cause of action to recover damages for breach of an express warranty requires proof of reliance.  Here, the plaintiff failed to establish that he relied on the oral and written express warranties of the defendant in purchasing the specific brand of wood for use in building his outdoor deck." (internal citations omitted)).

Rapczynski acknowledges that reliance constitutes an element of a claim for breach of express warranty in New York, but asserts that "warranty reliance" has a "specific definition," which differs from ordinary reliance principles.  (Pl. Mem. at 11.)  In support of this position, Rapczynski cites case law holding that even where a plaintiff has reason to know that the express warranties at issue may be false, he may nevertheless state a claim for breach of express warranty by showing he "believed [he] was purchasing the [seller's] promise [as to its truth]."

---

[4] This Court declines to consider choice of law here, as both Massachusetts and New York law present similar reliance problems for Rapczynski.

*CBS Inc. v. Ziff-Davis Publ. Co.*, 75 N.Y.2d 496, 503, 553 N.E.2d 997 (Ct. App. 1990) (quoting *Ainger v. Mich. Gen. Corp.*, 476 F. Supp. 1209, 1225 (S.D.N.Y. 1979)).  Despite the fact that reliance in warranty is not coextensive with reliance principles in tort, Beam is nonetheless correct in its assertion that "[i]n order for this rule to apply, . . . '[t]he plaintiff must show that it *believed* that it was purchasing seller's promise regarding the truth of the warranted facts.'" (Beam Opp. at 12 n. 11 (citing *Merrill Lynch & Co., Inc. v. Allegheny Energy, Inc.*, 500 F.3d 171, 186 (2d Cir. 2007)).); *see also Merrill Lynch*, 500 F.3d at 186 ("In contrast to the reliance required to make out a claim for fraud, the general rule is that a buyer may enforce an express warranty even if it had reason to know that the warranted facts were untrue.  This rule is subject to an important condition.  The plaintiff must show that it believed that it was purchasing seller's promise regarding the truth of the warranted facts." (internal citations omitted)).

This inquiry necessarily requires an evaluation of "both the extent and the source of the buyer's knowledge about the truth of what the seller is warranting."  *Rogath v. Siebenmann*, 129 F.3d 261, 264 (2d Cir. 1997).  Thus, the same causation problems that plague Rapczynski's other New York claims rear their heads with respect to his express warranty claim.  A baseline inquiry into Rapczynski's belief has revealed that he bought the product to thank his wife for all she does in the home, after hearing her remark that she liked it while at the party of a health-conscious friend.  And while incentives are not monolithic, Defendants will assert as a defense to Rapczynski's claim that there was no causation with respect to the alleged breach of warranty, as (1) he stated he would have bought the product regardless of price and (2) his belief with respect to its naturalness was irrelevant to his purchasing decision, given the statements about the impetus for the purchase.  Such defenses are unique to Rapczynski's claims and underscore the atypicality of Rapczynski's alleged reliance.  *Cf. Weiner v. Snapple Beverage Corp.*, No. 07 Civ.

14

8742, 2010 WL 3119452, at *11 (S.D.N.Y. Aug. 5, 2010) ("Given New York's 'basis of the bargain' conception of reliance for express warranty claims, it is clear that plaintiffs' purported reliance on Snapple's 'All Natural' label cannot be the subject of generalized proof.").

Thus, whether under New York or Massachusetts law, Rapczynski's breach of warranty claim also fails to meet Rule 23(a)'s typicality prerequisite. As discussed, central to the concept of a class action is the adage: "as goes the claim of the named plaintiff, so go the claims of the class." *Sprague*, 133 F.3d at 399. Here, it would do a disservice to the putative class to intertwine its fate with Rapczynski's atypical claims.

### 3. Promissory Estoppel

The Complaint also asserts a cause of action for promissory estoppel, alleging that "Defendants clearly and unambiguously promised the public that 'Skinnygirl Margarita' was 'All-natural' and contained only '100% Blue Agave tequila' when in fact impure *mixto* 'tequila' was used." (Compl. at ¶ 53.) The causation and reliance issues associated with this claim are similar to those previously discussed with Rapczynski's warranty claim, whether he asserts promissory estoppel under New York or Massachusetts law.

Promissory estoppel constitutes a "legal fiction" which acts as a "substitute for contractual consideration where one party relied on another's promise without having entered into an enforceable contract." *Bader v. Wells Fargo Home Mortg., Inc.*, 773 F. Supp. 2d 397, 414 (2d Cir. 2011) (internal quotations omitted). In New York, promissory estoppel constitutes three, distinct elements: (1) "a clear and unambiguous promise"; (2) "a reasonable and foreseeable reliance by the party to whom the promise is made"; and (3) "an injury sustained by the party asserting the estoppel by reason of the reliance." *Cyberchron Corp. v. Calldata Sys. Development, Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (internal quotations omitted). In

15

Massachusetts, promissory estoppel requires: (1) "[t]hat the promisor made a promise which he reasonably should expect to induce action or forbearance of a definite and substantial character on the part of the promisee"; (2) "[t]he promise induced such action or forbearance"; and (3) "[i]njustice can be avoided only by the enforcement of the promise." *Hurwitz v. Prime Comm., Inc.*, No. Civ. A. 91-006694, 1994 WL 561834, at *3, 2 Mass. L. Rptr. 74 (Mass. Super. Apr. 4, 1994); *accord Loranger v. Constr. Corp. v. E.F. Hauserman Co.,* 6 Mass. App. Ct. 152, 154 (1978).

As discussed, atypical issues and defenses plague Rapczynski's claims requiring reliance or causation. Rapczynski stated that he would have purchased the Skinnygirl bottle whatever the price, given his home situation, and given his desire to please his wife. Thus, his injury—namely whatever premium he may have paid or unnatural substance he may have imbibed—suffers from a causal break that will focus the litigation on the particularities and factual circumstances of Rapczynksi's own purchase. Such a result would be an unjust one for any putative class, whose success, in no small part, would depend on the typicality of their representative's claims, which are to serve as the voice for all.

### III. Conclusion

For the foregoing reasons, Rapczynski's motion for class certification is DENIED. The Clerk of Court is directed to close the motion at docket entry number 25.

SO ORDERED.

Dated: New York, New York
       January 9, 2013

_____
J. PAUL OETKEN
United States District Judge